# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | |
|---|---|
| Nicholas J. Lynch,  )<br>       )<br>   Petitioner,  )<br>       )<br>v.   )<br>       )<br>United States of America,  )<br>       )<br>   Respondent.  ) | 7:20-cv-08003-LSC<br>7:18-cr-00191-LSC-GMB |

### MEMORANDUM OF OPINION

Pursuant to 28 U.S.C. § 2255 ("§ 2255"), Nicholas J. Lynch ("Lynch") filed with the Clerk of this Court a motion to vacate, set aside, or otherwise correct his sentence of 60 months' imprisonment. (Doc. 1.) The United States responded in opposition to the motion. (Doc. 6.) For the following reasons, Lynch's § 2255 motion is due to be dismissed.

### I.   BACKGROUND

Prompted by complaints of drug activity, agents of the West Alabama Narcotics Task Force knocked on the door of Room 123 of the Roadway Inn in Tuscaloosa. (Cr. Doc. 18 at 2.) Lynch opened the door, and the agents detected the scent of marijuana emanating from the room. (*Id.*) Lynch consented to a search of the room. (*Id.* at 3.) Atop the

nightstand, agents observed a Glock, .40 caliber pistol as well as crack and powder cocaine. (*Id.* at 2–3.) The pistol was loaded, but not chambered, with twelve rounds of ammunition. (*Id.*)

A grand jury subsequently indicted Lynch on two counts: Count I—possession of crack cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and Count II—possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). (Cr. Doc. 1.) The Court appointed Jason Neff as CJA counsel. (Cr. Docs. 13–15.)

Lynch entered, and this Court accepted, a guilty plea as to Count I of the indictment. (Cr. Doc. 18.) The government agreed to the dismissal of Count II. (*Id.* at 1.) Pursuant to his plea agreement, Lynch agreed that "the facts stated [in the plea agreement] are substantially correct and that the Court can use these facts in calculating [his] sentence." (*Id.* at 4.)

Before the sentencing hearing, the Court granted Jason Neff's motion to withdraw, and Victor Revill thereafter represented Lynch. (Cr. Docs. 20–24.) The Court sentenced Lynch to 60 months' imprisonment—to run concurrently with any yet-to-be imposed sentences of the

Tuscaloosa County Circuit Court. (Cr. Doc. 27 at 2.) This Court entered judgment on January 23, 2019. (Cr. Doc. 27.) Lynch did not file an appeal.

Lynch executed the present § 2255 motion on January 8, 2020, and the Clerk of this Court entered the motion into the record on January 21, 2020.[1] (Doc. 1.) Lynch argues that his attorney should have objected to the 2D1.1(b)(1) firearm enhancement, and that his attorney should have adequately apprised him of the consequences of the enhancement.[2] *(Id.* at 4.) Lynch claims that "[the] lawyer told me that I would qualify for the year off from taking/graduating R.D.A.P." (Residential Drug Abuse Program) (*Id.*) On January 31, 2022, Lynch was released from confinement and now lives at a residential address.[3] (*See* doc. 10).

As Lynch filed the instant § 2255 motion within one year after the date on which his conviction became final, the motion is timely. *See* 28 U.S.C. § 2255(f)(1). By all accounts, Lynch has not filed a prior § 2255 motion, so it is not "second or successive" within the meaning of the Anti-

---

[1] Applying the "mailbox rule," the Eleventh Circuit deems a prisoner's § 2255 motion as filed upon the "date that he delivered it to prison authorities for mailing, presumptively, . . . the day that he signed it." *Jones v. United States*, 304 F.3d 1035, 1038 n.7 (11th Cir. 2002) (per curiam).

[2] Because Lynch is a *pro se* litigant, the Court liberally construes his pleadings. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

[3] *Find an Inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (searched "Nicholas Jerisaac Lynch") (last visited February 21, 2023).

Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. §§ 2255(h), 2244(b)(3)(A).

## II. STANDARD OF REVIEW

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to 28 U.S.C. § 2255 are limited. A petitioner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)).

In litigation stemming from a § 2255 motion, "[a] hearing is not required on patently frivolous claims or those which are based upon

unsupported generalizations. Nor is a hearing required where the [movant's] allegations are affirmatively contradicted by the record." *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting *Guerra v. United States*, 588 F.2d 519, 520–21 (5th Cir. 1979)). However, an evidentiary hearing is appropriate if, "accept[ing] all of the petitioner's alleged facts as true," the movant has "allege[d] facts which, if proven, would entitle him to relief." *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (quoting *Agan v. Dugger*, 835 F.2d 1337, 1338 (11th Cir. 1987) and *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989)).

### III. DISCUSSION

#### A. Mootness

In his § 2255 motion, Lynch requests the following relief: "Removal of the firearm enhancement, so that I may receive the year benefits from the RDAP that I am about to graduate." (Doc. 1 at 12.)  The Court cannot provide this relief because Lynch is no longer in prison. (Doc. 10.)

Constrained by Article III of the Constitution, federal "courts have no business deciding legal disputes or expounding on law in the absence of [] a case or controversy." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) (quotation marks omitted). A case or controversy must remain live

during every stage of litigation; otherwise, it becomes moot. *See Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974). "A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir. 1993).

In essence, Lynch asks the Court to reduce the time he spends in prison because of his participation in the RDAP program. As Lynch is no longer in prison, it would be impossible for the Court to grant this request. Accordingly, the instant motion is moot. Even if his § 2255 motion presented a live controversy, however, Lynch would still be unable to obtain his requested relief for the reasons set forth below.

******

As the government argues, Lynch apparently asserts two claims in his § 2255 motion—that his sentence was improperly enhanced, and that his attorney at sentencing rendered ineffective assistance by failing to object to the enhancement and by failing to adequately apprise him of the consequences of the enhancement.[4] (*See* doc. 6 at 6.) These claims are

---

[4] For the instant § 2255 motion, the Court assumes, as does the government, that Lynch refers to Victor Revill, his attorney at sentencing. However, for the reasons set forth in this opinion, Lynch is not entitled to relief even if he intended to refer to Jason Neff, his attorney when he signed the plea agreement.

without merit.

### B. Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel may be raised for the first time in a § 2255 motion and are therefore not subject to a procedural bar for failing to raise them on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). An ineffective assistance of counsel claim has two components: first, the petitioner "must show that the counsel's performance was deficient;" second, the petitioner "must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the first component, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The second component is satisfied only when the defendant shows that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In examining counsel's performance, the Court should be "highly deferential." *Id.* at 689. The Court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

conduct from counsel's perspective at the time." *Id.* The Court must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*; *see also Bell v. Cone*, 535 U.S. 685, 702 (2002) (holding that "tactical decision[s] about which competent lawyers might disagree" do not qualify as objectively unreasonable). A petitioner who seeks to overcome this presumption does not carry his burden by offering bare accusations and complaints; rather, he "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Where a petitioner fails to show that his counsel's performance fell below an objective standard of reasonableness, the court need not address the issue of prejudice. *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000). Where the court does consider this prong, the petitioner must show that counsel's errors were prejudicial and "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. This burden is met by establishing by a reasonable probability that the outcome of the proceeding would have been different but for counsel's errors. *See Williams v. Threatt,* 529 U.S. 362, 391–93 (2000); *Strickland*,

466 U.S. at 691.

To establish prejudice in the context of a guilty plea, a movant must establish that, but for his counsel's unprofessional errors, "he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 53, 59 (1985). In the guilty plea context, there is a strong presumption that an attorney's actions are reasonable. *Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348–49 (11th Cir. 2015). "We recognize that in deciding whether to enter a plea, defense lawyers carefully balance both 'opportunities and risks' without fully knowing the strength of the [prosecution's] case. Therefore, we must, as we do for all *Strickland* claims, afford 'substantial deference' to a lawyer's strategic choices." *Id.* (citing *Premo v. Moore*, 562 U.S. 115, 124 (2011)). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. The defendant must show "that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d

1305, 1315 (11th Cir. 2000) (en banc).

Lynch's claim of ineffective assistance of counsel is without merit. His attorney, Victor Revill, did not violate the "objective reasonableness" standard by failing to object to the firearm enhancement, and even if Revill had objected, the result would have been no different.

Prior to Revill's representation, Lynch entered into a binding plea agreement in which he stipulated to having a loaded (but not chambered) pistol in close proximity to drugs in a hotel room and further agreed to a binding sentence of sixty months—the sentence he actually received. (*See* Cr. Doc. 18.) In this context, the Guidelines provide for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed." *See* U.S.S.G. § 2D1.1(b)(1). The application notes to the Guidelines further explain that:

> "[t]he enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."

*Id.* § 2D1.1(b)(1) cmt. n.11.

With these considerations in mind, Lynch cannot satisfy *Strickland*'s difficult standard. Based on the stipulated facts, the two-

level enhancement was clearly applicable, so Revill was not deficient for failing to object at sentencing. In any event, such an objection would have been unavailing, for the outcome would have remained the same. Lynch does not dispute the stipulated facts of the plea agreement; rather, Lynch claims that he "had no intentions for a firearm to ever be there." (Doc. 1 at 4.) Irrespective of Lynch's subjective intent, however, the enhancement would still apply.

Moreover, to Lynch's chagrin, the enhancement apparently entails that he is not eligible for a year's reduction in his sentence despite his participation in the RDAP program. At sentencing, Revill inquired about RDAP, and the Court agreed to request that he be allowed to participate in RDAP—nothing was promised. (Doc. 6-2 at 7–10.) Inmates are not guaranteed entry to the RDAP program. (*See id.*) This distinction further undercuts any suggestion that Lynch received ineffective assistance of counsel.[5] *Cf. Tahamtani v. Lankford*, 846 F.2d 712, 714 (11th Cir. 1988)

---

[5] Even if Lynch's previous attorney (Jason Neff) promised him a year's reduction for participation in RDAP before he signed the plea agreement, there is still no suggestion the outcome would be any different. As discussed above, the Court at sentencing indicated that Lynch could not rely on being admitted to the program, yet Lynch did not object. *Cf. United States v. Bradley*, 905 F.2d 359, 360 (11th Cir. 1990) ("To the extent that Bradley claimed his guilty plea was based on his attorney's estimate of the sentence and offense level, the claim did not warrant withdrawal of the guilty plea where Bradley acknowledged to the court that he understood the

("In light of the fact that [the defendant] knew that there was a possibility that he could receive the sentence that was imposed, his disappointment with the result is not grounds to set aside the guilty plea."). In addition, as part of his binding plea, the government agreed to move to dismiss Count II. Count II, a violation of 18 U.S.C. § 924(c), carried a mandatory minimum of sixty months in addition to any other punishment for Count I. *See* 18 U.S.C. § 924(c)(1)(A). Thus, as this Court made clear, Lynch would have received a sentence of sixty months or more regardless. (Doc. 6-2 at 8–9.)

### C. Substantive Claim

"When a defendant fails to pursue an available claim on direct appeal, it will not be considered in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice resulting from the alleged error." *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (per curiam).

Lynch's claim that his sentence was improperly enhanced is procedurally barred because he did not pursue this claim on direct

---

possible maximum sentence for his crime to be greater than the sentence the court ultimately imposed."). Additionally, in his § 2255 motion, Lynch does not claim that he would not have pleaded guilty had he better understood the consequences of the enhancement.

appeal. He makes no attempt to show cause for his failure to file a direct appeal, and he fails to show any actual prejudice resulting from the alleged error. In other words, Lynch fails to demonstrate any factual basis supporting the finding of a reasonable probability that, had he raised the issue on direct appeal, the Eleventh Circuit would have ruled in his favor. As previously discussed, the firearm enhancement was applicable in light of the stipulated facts.

Additionally, Lynch waived all non-jurisdictional defects in the proceedings when he entered into the plea agreement. *See United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) ("A guilty plea, since it admits all elements of a formal criminal charge, waives all non-jurisdictional defects in the proceedings against a defendant.") (quoting *United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir. 1986)).

## IV. CONCLUSION

For the foregoing reasons, Lynch's § 2255 motion to vacate, set aside, or correct a sentence is due to be dismissed.

Rule 11 of the Rules Governing § 2255 Proceedings requires the Court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. *See* Rule 11, Rules Governing § 2255

Proceedings. This Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-EL v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack*, 529 U.S. at 484). This Court finds that Lynch's claims do not satisfy either standard.

The Court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** on February 27, 2023.

_____
L. Scott Coogler
United States District Judge

211211